## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **GEORGE ANGULO and ABIGAIL ANGULO, individually and on behalf of others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 5:24-cv-182** **JURY DEMAND** |
| **v.** | ) ) | |
| **SAFECO INSURANCE COMPANY OF INDIANA,** | ) ) ) | |
| **Defendant.** | ) ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs George Angulo and Abigail Angulo (collectively "Plaintiffs"), individually and on behalf of others similarly situated, for their Class Action Complaint against Defendant Safeco Insurance Company of Indiana ("Defendant" or "Safeco"), state and allege the following:

### OVERVIEW OF CLAIMS

1.      This is a class action lawsuit arising out of a dispute between policyholders and their property insurer, Safeco. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be withheld by Safeco as "depreciation" when Safeco calculates and pays its actual cash value ("ACV") payment obligations for structural property losses.

2.      This lawsuit addresses only the cost of future repair labor required to fix a building or structure. This lawsuit does *not* seek to address the propriety of depreciating any labor incorporated or embedded within a building product. Plaintiffs do not dispute that both labor and materials incurred to create a building product (such as a shingle or piece of siding) becomes

integrated with the product and may be depreciated as part of the calculation of ACV benefits. *See Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617, 620 n.2 (Ariz. 2022).

3.      Future labor is at issue because, pursuant to Safeco's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to a damaged structure. In contrast to ACV coverage, replacement cost value ("RCV") coverage payments are made retrospectively, after repairs have been completed.

4.      Most property insurers in Texas do not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers in Texas do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld—*i.e.*, a policy that expressly uses the terms "labor" and "depreciate" or "depreciation," and addresses the issue within the text of the form or endorsement. Others, such as Safeco, withhold future labor as depreciation even under policies that do not contain such provisions. Safeco's policies at issue did not include any provision or language that allowed it to withhold labor as depreciation when making ACV payments for structural loss claims.

5.      Property insurers within the Liberty Mutual Group, including Safeco, have faced repeated lawsuits around the country concerning their practice of depreciating future labor from ACV payments. *See, e.g., Glasner, et al. v. Am. Economy Ins. Co., et al*., Case No. 1:21-cv-11047 (D. Mass.); *Whiting v. Liberty Ins. Corp*., Case No. 2:23-cv-04169 (W.D. Mo.); *Shulte, et al. v. Liberty Ins. Corp., et al*., Case No. 3:19-cv-00026 (S.D. Ohio); *Carter, et al. v. Safeco Ins. Co. of Ind., et al*., Case No. 3:20-cv-00002 (S.D. Ohio); *Holmes, et al. v. LM Ins. Corp., et al*., Case No. 3:19-cv-0466 (M.D. Tenn.); *Northside Church of Christ v. Ohio Sec. Ins. Co.*, Case No. 3:20-cv-00184 (M.D. Tenn.); *Aqeel, et al. v. Liberty Ins. Corp., et al*., Case No. 3:21-cv-00181 (M.D.

Tenn.); *Cortinas, et al. v. Liberty Mut. Pers. Ins. Co., et al.*, Case No. 5:22-cv-00544 (W.D. Tex.). While some of these cases are still pending, the cases that have been resolved resulted in Liberty Mutual Group insurers ceasing the practice or engaging in the practice only under policies that contain a labor depreciation permissive form in the state(s) at issue in those cases.

6.      The issue presented is a question of law (whether labor may be depreciated in the absence of a labor depreciation permissive form) and was recently addressed by the Fifth Circuit Court of Appeals in *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law), as well as by the U.S. District Court for the Western District of Texas in *Sims v. Allstate Fire & Casualty Company, et al.*, No. SA-22-CV-00580-JKP, 2023 WL 175006, at *4 (W.D. Tex. Jan. 11, 2023) (applying Texas law) and *Cortinas, et al. v. Liberty Mutual Personal Insurance Company, et al.*, No. SA:22-CV-00544-OLG, Dkt. 37 (W.D. Tex. Mar. 14, 2023) (applying Texas law).

7.      In *Mitchell*, the Firth Circuit held that the interpretations of the insurer and insured of the otherwise undefined phrase "actual cash value" were both reasonable, and thus the policy was ambiguous and must be construed in favor of the insured. 954 F.3d at 703, 707.

8.      The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same as it relates to all the contractual interpretation issues before the Court. *Sims*, 2023 WL 175006, at *4 ("The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same with regard to contractual interpretation and are substantially similar with regard to the definition and interpretation of 'actual cash value.'"). The chart below compares the consistency between the two States:

| Issue | *Mitchell v. State Farm* (Mississippi) | Case Before the Court (Texas) |
|---|---|---|
| Determination of whether an insurance policy term is ambiguous | Under Mississippi law, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpretation, the term shall be considered ambiguous and construed in favor of the insured. *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 705-06 (5th Cir. 2020). | "As shown in *Mitchell*, under Mississippi law as in Texas, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpretation, the term shall be considered ambiguous and construed in favor of the insured." *Sims v. Allstate Fire & Cas. Co., et al.*, No. SA-22-CV-00580-JKP, 2023 WL 175006, at *4 (W.D. Tex. Jan. 11, 2023). |
| Interpretation of ambiguous provisions within insurance policies | Under Mississippi law, "ambiguity and doubt in an insurance policy must be resolved in favor of the insured." *Mitchell*, 954 F.3d at 705 (citing *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978)). | Under Texas law, when an insurance policy is ambiguous, courts "must resolve the uncertainty by adopting the construction that most favors the insured." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |
| When a policy provision is ambiguous | "[W]e need only determine whether [the insured's] interpretation is a reasonable one—not necessarily the most reasonable." *Mitchell*, 954 F.3d at 706 (citing *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981)). | If both the insured and insurer "present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous." Uncertainty must be resolved in favor of the insured "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI Indem.*, 466 S.W.3d at 118 (citations omitted). |

9.    This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiffs' and putative class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION, AND VENUE

10.    Plaintiffs George Angulo and Abigail Angulo are citizens and residents of Frisco, Texas. At all times relevant hereto, Plaintiffs owned the dwelling and other structures located at 2250 Sturgis Drive, Frisco, Texas 75033 (the "Insured Property").

11.     Defendant Safeco is an insurance company organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. Safeco is authorized to sell property insurance policies in the State of Texas, including within this judicial district.

12.     This Court has personal jurisdiction over Safeco because Safeco has availed itself of the privilege of conducting business and issuing contracts covering buildings and structures in the State of Texas. More specifically, Safeco contracts to insure property and risks in Texas, transacts business in Texas, enters into contracts in Texas, committed the acts at issue in this lawsuit in Texas, and otherwise has sufficient minimum contacts with the State of Texas.

13.     Safeco is a wholly owned subsidiary of Liberty Mutual Insurance Company. Safeco engaged in the contractual breaches described herein in a uniform manner and pursuant to a uniform policy.

14.     On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the parties are minimally diverse, there are more than 100 members in the proposed class, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     Venue is proper in this forum because, *inter alia*, Safeco resides in the Western District of Texas pursuant to 28 U.S.C. § 1391, and related putative class action litigation involving Safeco and other subsidiaries of Liberty Mutual Insurance Company, a parent company of Safeco, are also pending within the Western District of Texas.

16.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Safeco's property insurance policyholders who are similarly situated.

## FACTS

### A.    Introduction and Scope of Lawsuit

17.    Safeco sells property insurance coverage for, *inter alia*, residential and commercial buildings and structures in the State of Texas.

18.    This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

19.    Further, this lawsuit only concerns claims in which Safeco accepted coverage and then chose to calculate its ACV payment obligations exclusively pursuant to the replacement cost less depreciation ("RCLD") methodology, as opposed to a fair market value approach.

20.    Courts in several jurisdictions hold that the RCLD methodology is reasonably intended to result in an ACV payment to the policyholders in an amount that allows the policyholders to return the damaged property to its *status quo ante*, thereby precluding the withholding of labor costs from ACV payments. *See generally Mitchell*, 954 F.3d at 706-07.

21.    Further, this lawsuit only concerns future repair labor. This lawsuit does not contest that labor used to make a building product (such as a shingle or electrical outlet) become "embedded" within the building product or building and can be depreciated as part of an ACV calculation.

### B.    Plaintiffs' Insurance Policy and Loss

22.    Plaintiffs contracted with Safeco for an insurance policy providing coverage for certain losses to the Insured Property. The policy number was OY7946287 (the "Policy").

23.    Plaintiffs paid Safeco premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

24.     On or about February 22, 2022, the Insured Property suffered hail damage covered by the Policy (the "Loss"). The damage to the Insured Property required replacement and/or repair.

25.     Plaintiffs timely submitted a claim to Safeco requesting payment for the Loss.

26.     Safeco determined the Loss to the Insured Property was covered by the terms of the Policy.

27.     At all relevant times, Safeco's methodology for calculating the ACV of structural damage losses in Texas, including Plaintiffs' Loss, was to estimate the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), and then to subtract the estimated depreciation.

28.     The Policy, and the other property forms issued by Safeco to putative class members, do not permit the withholding of labor as depreciation as described below. In contrast with the Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. That type of form or endorsement will be referred to as a "labor depreciation permissive form."

29.     Plaintiffs' Policy does not contain a labor depreciation permissive form.

**C.      Safeco's Calculation of Plaintiffs' ACV Payment**

30.     In adjusting Plaintiffs' claim, Safeco affirmatively and unilaterally chose to use the RCLD methodology to calculate Plaintiffs' Loss and to make Plaintiffs' ACV payment. Safeco did not use any other methodology to calculate Plaintiffs' ACV payment. The Policy, itself, adopts the RCLD methodology for determining ACV.

31.     Safeco did not calculate any portion of Plaintiffs' Loss by reference to or analysis of any alleged increase or decrease in the market value of their home, or the market value of any portion of their property.

32.     Safeco did not conduct an appraisal of Plaintiffs' Loss.

33.     Safeco did not conduct an appraisal of Plaintiffs' Insured Property.

34.     Safeco has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

35.     After Plaintiffs' Loss, Safeco sent an adjuster to inspect the Insured Property and estimate the ACV.

36.     Safeco used commercially available computer software to estimate Plaintiffs' RCV, depreciation, and ACV calculations. The software used to calculate the ACV payment to Plaintiffs is called Symbility®.

37.     As set forth in the written Symbility® estimate provided to Plaintiffs, Safeco determined that Plaintiffs had suffered covered losses to the Insured Property. The Symbility® estimate generated by Safeco included the estimated cost of materials and future labor required to complete the repairs (the RCV).

38.      In calculating its ACV payment obligation to Plaintiffs, Safeco used Symbility® to determine the depreciation to subtract from the RCV.

39.     Plaintiffs were underpaid on their ACV claim and deprived of the use of their money from the time they should have received full ACV payment until the date they recovered the wrongfully withheld amounts, as more fully described below.

**D.    Safeco's Practice Of Withholding Future Labor As Depreciation**

40.     For Plaintiffs and putative class members, Safeco used Xactimate® or Symbility® software to calculate ACV payments. Xactimate® and Symbility® are used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and are also used to calculate depreciation to determine ACV payments under the RCLD methodology.

41.    The only methodology used by Xactimate® and Symbility® to calculate ACV payments for structural damage is the RCLD methodology. Neither Xactimate® nor Symbility® use other methodologies to calculate ACV, such as, *e.g.*, the calculation of ACV through a fair market value as determined by a real estate appraisal.

42.    Because Xactimate® and Symbility® do not use any methodology to calculate ACV other than "replacement cost less depreciation," a property insurer only makes an ACV payment through Xactimate® or Symbility® after the property insurer itself has affirmatively determined and agreed to use the RCLD methodology.

43.    Safeco unfairly manipulates the claims estimating software to withhold future labor from ACV payments and did so when issuing payments to Plaintiffs and the putative class members.

44.    Xactimate® and Symbility® generate estimate prices from their ongoing fair market pricing research. The price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

45.    When adjusting property insurance claims with Xactimate® or Symbility®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the roofing, siding, or other damaged building materials.

46.    The claims estimating software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

47.    Xactimate® and Symbility® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example,

the following screenshot from the Symbility® program's option settings allow the software to select depreciation to apply to "labor," "equipment," and "overhead and profit," which will result in the withholding of labor from an ACV payment. In contrast, selecting the setting for "materials" only will not result in the withholding of labor from an ACV payment. Symbility® is the estimating software utilized by Safeco to calculate the ACV owed to Plaintiffs.



Likewise, the below screenshot from the Xactimate® program shows that the insurer can choose to select or de-select "Depreciate Non-Material," "Depreciate Removal," or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.

Depreciation Options
- ☑ Depreciate Material
- ☑ Depreciate Non-Material
- ☑ Depreciate Removal
- ☑ Depreciate Overhead and Profit
- ☑ Depreciate Sales Tax

48.    Plaintiffs had labor withheld from their ACV payment due to Safeco's manipulation of claims estimating software as alleged above.

49.    When Safeco calculated Plaintiffs' ACV benefits owed, Safeco withheld costs for both the materials and future labor required to repair Plaintiffs' property as depreciation, even though labor does not depreciate in value over time. Safeco withheld labor costs as depreciation throughout its ACV calculations as depreciation.

50.    In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including the labor costs, the laborers' equipment costs, and the contractors'/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

51.    Safeco's withholding of future labor costs as depreciation resulted in Plaintiffs receiving payment in an amount less than what they were entitled to receive under their Policy. Safeco breached its obligations under Plaintiffs' Policy by improperly withholding the future cost of labor as depreciation.

52.    Without expert assistance, Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial

property estimating programs at issue (Xactimate® and Symbility®), as well as the electronic file associated with the respective estimate.

53.     While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a RCLD methodology.

54.     Safeco's failure to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their Loss.

55.     Future labor which has not yet been incurred, by its nature, does not depreciate, and an insurer therefore may not withhold future labor as depreciation.

56.     Safeco materially breached its duty to indemnify Plaintiffs by withholding future labor costs associated with repairing or replacing the Insured Property from ACV payments as depreciation, thereby paying Plaintiffs less than they were entitled to receive.

57.     Plaintiffs have no individual claim disputes unrelated to the subject matter of labor depreciation. Plaintiffs' sole dispute is whether portions of the agreed-to and undisputed amounts of future labor, as determined by Safeco itself, may be withheld by Safeco as "depreciation" from Safeco's ACV payments under the terms and conditions of the Policy, including but not limited to depriving Plaintiffs of the time use of money resulting from the periods of labor withholding in the form of prejudgment interest.

**AMOUNT IN CONTROVERSY**

58.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

59.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

60.     The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All Safeco policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in Texas; and

(2) for which Safeco accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of labor depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means the application of the "labor," "equipment," or "overhead and profit" depreciation option settings in Symbility® software and/or the application of "Depreciate Non-Material," "Depreciate Removal," "Depreciate Overhead and Profit" option settings within Xactimate® software, or any other settings that results in depreciation of future repair labor (including general contractor's overhead and profit, if awarded), and any other similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance were exhausted by the initial actual cash value payment. The class also excludes any claims arising under labor depreciation permissive forms, *i.e.*, those policy forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form or endorsement.

61.     Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Safeco and its

subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed class; and (3) the Court to which this case is assigned and its staff.

62.    Plaintiffs and members of the putative class as defined suffered injury and have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policies. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies. However, policyholders who have been subsequently repaid for initially withheld labor costs still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

63.    The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Texas have been damaged by Safeco's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Safeco or from information readily available to Safeco.

64.    The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

65.    Safeco has acted on grounds generally applicable to the proposed class in that Safeco has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Safeco will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

66.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.    Whether the applicable policy language allows the withholding of future labor costs in the calculation of ACV payments under the RCLD methodology;

b.    Whether applicable policy language is ambiguous concerning the withholding of future labor costs in calculating ACV payments, and if so, how the insurance policies should be interpreted;

c.    Whether the withholding of future labor costs in the calculation of ACV payments breaches the applicable insurance policies;

d.    Whether Safeco has a custom and practice of withholding future labor costs in the calculation of ACV payments;

e.    Whether Plaintiffs and members of the proposed class have been damaged as a result of the withholding of future labor costs in the calculation of ACV payments; and

f.    Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

67.    Plaintiffs' claims are typical of the claims of the proposed class members, as they are similarly affected by the customs and practices alleged herein. Further, Plaintiffs' claims are typical of the claims of the proposed class members because the claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

68.     Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be class representatives.

69.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

70.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of

the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

71.    Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

72.    Class certification is further warranted because Safeco has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

73.    Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

### COUNT I
### BREACH OF CONTRACT

74.    Plaintiffs restate and incorporate by reference all preceding allegations.

75.    Safeco entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Safeco and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

76.    These policies of insurance are binding contracts under Texas law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

77.    Safeco drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Safeco calculates ACV under a RCLD methodology.

78.    In order to receive or be eligible to receive ACV payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policies.

79.    Safeco breached its contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor as described herein.

80.    In this breach of contract count, Plaintiffs and members of the proposed class do not dispute the amounts of labor calculated by Safeco or any other claim determinations made by Safeco. Rather, Plaintiffs and the putative class only dispute whether the agreed to and undisputed amounts of future labor, as determined by Safeco itself, may be withheld from Plaintiffs and putative class members as "depreciation."

81.    Safeco materially breached its duty to indemnify Plaintiffs and the putative class members by withholding labor costs from ACV payments as depreciation, thereby paying less than Plaintiffs and the putative class members were entitled to receive under the terms of their policies,

including but not limited to depriving Plaintiffs and the putative class members of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

82.     As a direct and proximate result of Safeco's breach of the insurance policies, Plaintiffs and members of the proposed class suffered damage. More specifically, Plaintiffs and the putative class members received payment for their losses in an amount less than they were entitled to receive under the policies.

83.     Safeco's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

84.     In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest for all periods of withholding as may be allowed by law.

**COUNT II**
**DECLARATORY JUDGMENT AND RELIEF**

85.     Plaintiffs restate and incorporate by reference all preceding allegations.

86.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

87.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

88.     Plaintiffs and members of the proposed class have complied with all relevant conditions precedent in their contracts.

89.     Plaintiffs seek, individually and on behalf of the proposed class, a declaration that Safeco's property insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

90.     Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

91.     Plaintiffs and members of the proposed class have and will continue to suffer injuries.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.      Enter an order certifying this action as a class action, appointing George Angulo and Abigail Angulo as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.      Enter a declaratory judgment, declaring that Safeco's withholding of future labor costs as depreciation is contrary to and breaches the insurance policies issued to Plaintiffs and members of the proposed class;

3.      Enter a declaration, and any preliminary and permanent injunction and equitable relief against Safeco and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the policies, practices, customs, and usages complained of herein concerning the withholding of future labor costs as depreciation, as may be allowed by law;

4.    Enter an order that Safeco specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practice of withholding future labor costs as depreciation, as complained of herein;

5.    Award compensatory damages for all sums withheld as labor depreciation as defined above, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6.    Award attorneys' fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

7.    Pre- and Post-Judgment interest; and

8.    Grant such further and additional relief as the Court deems necessary and proper.


Respectfully submitted,


/s Shaun W. Hodge
Shaun W. Hodge
Texas Bar No. 24052995
shodge@hodgefirm.com
The Hodge Law Firm, PLLC
The Historic Runge House
1301 Market Street
Galveston, Texas 77550
Telephone: (409) 762-5000
Facsimile: (409) 763-2300

***Attorney for Plaintiffs and
Proposed Class Representatives***